# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HOLGUIN, | Case No. 1:15-cv-00731-SAB |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 10, 11) |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Jesse Holguin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hypertension, asthma, insomnia, erectile dysfunction, hearing loss, posttramatic stress disorder ("PTSD"), major depressive disorder, and a history of alcohol abuse in remission. (AR 29.) For the reasons set forth below, Plaintiff's Social Security appeal shall be

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 4, 6.)

denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 22, 2011. (AR 195.) Plaintiff's application was initially denied on December 1, 2011, and denied upon reconsideration on April 25, 2012. (AR 122-125, 130-134.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on May 16, 2013. (AR 42-75.) On August 12, 2013, the ALJ found that Plaintiff was not disabled. (AR 24-37.) The Appeals Council denied Plaintiff's request for review on December 19, 2014. (AR 9-12.)

**A.    Hearing Testimony**

Plaintiff testified at the hearing on May 16, 2013. (AR 45-69, 71.) Plaintiff was born on October 5, 1951. (AR 45.) Plaintiff is right-handed, 5' 5" tall, and weighs 190 pounds. (AR 45-46.) Plaintiff is separated and has two adult children. (AR 46.) Plaintiff lives in a house with his 92 year old mother who is retired. (AR 46.) Plaintiff and his sister take care of his mother. (AR 46-47.) Plaintiff does not drink or smoke, and has no history of drug use. (AR 57.) Plaintiff used to drink. (AR 57.)

Plaintiff served in the military, was trained in communications, and received an honorable discharge. (AR 49.) Plaintiff receives disability payments from the Veteran's Administration. (AR 47.) Plaintiff has been adjudged 70 percent disabled by the Veteran's Administration. (AR 47.) Plaintiff is on vocational rehabilitation for his quality of life. (AR 47-48.) Plaintiff was on unemployment until 2011 and was actively looking for work at that time. (AR 50-51.) Plaintiff went to many interviews but did not receive any job offers. (AR 51.) Plaintiff walked out of one interview and does not know why. (AR 66.) Plaintiff received unemployment benefits during 2010 and 2011. (AR 50.)

Plaintiff received his GED in the service. (AR 48.) Plaintiff attempted to go back to school on the GI Bill, but dropped out. (AR 48.) Plaintiff received special services in elementary school for language. (AR 49.) Plaintiff can read and write at the high school level.

1  (AR 49.)  Plaintiff had a driver's license but it was suspended in 1999 for driving under the
2  influence. (AR 48.)  Plaintiff volunteers at his church for a couple of hours cleaning up the
3  church. (AR 50.)

4       Plaintiff had his own business from 1998 to 2001 repairing computers and installing
5  telephones. (AR 52.)  Plaintiff last worked for Central Valley Indian Heath as an IT tech person
6  in 2002. (AR 52-53.)  Plaintiff is unable to work because he is short tempered, has difficulty
7  remembering things, and is tired. (AR 53.)  Plaintiff started seeing a psychiatrist in 2010. (AR
8  53-54.)  Plaintiff's psychiatric issues vary in intensity. (AR 54.)  Plaintiff attends a PTSD group
9  once a week and takes two medications for mood and one to help him sleep. (AR 55.)  Plaintiff
10 uses an inhaler for asthma and takes medication for blood pressure and his prostrate. (AR 55-
11 56.)

12      The medication for his mood helps, but relief with the sleeping medication is
13 inconsistent. (AR 56.)  Plaintiff's asthma is caused by weather and exertion. (AR 58.)  Plaintiff
14 has always had problems with his memory, but it has gotten worse. (AR 58.)  Plaintiff gets
15 distracted very easily and has trouble concentrating. (AR 58-59.)  Plaintiff is sometimes able to
16 follow simple instructions, but at other times gets frustrated. (AR 59.)  When he gets frustrated
17 he gets angry. (AR 59.)  Plaintiff is impulsive and makes bad decisions. (AR 59.)

18      Plaintiff has trouble getting along with other people. (AR 59.)  When Plaintiff worked at
19 Indian Health he was written up for being too abrasive and not getting along with other
20 employees. (AR 59, 66.)  Plaintiff had the police called on him, but that might have been alcohol
21 related. (AR 60.)  Plaintiff has nightmares almost every day and sometimes has flashbacks about
22 once a week but can go long periods of time without a flashback. (AR 60.)  When he gets a
23 flashback he feels like he is back in Vietnam. (AR 67.)  Plaintiff has flashbacks around the time
24 of anniversaries of things that happened when he was in Vietnam. (AR 67.)  His flashbacks are
25 sporadic. (AR 67.)

26      On an average day, Plaintiff has to get up and go outside in the morning. (AR 61.)
27 Plaintiff cuts the lawn and does things around the house. (AR 61.)  Plaintiff picks up the trash,
28 cuts the lawn, trims trees, and does laundry. (AR 61.)  Plaintiff will vacuum or cook

occasionally and does repairs around the house. (AR 62.) His mother or sister does the dishes and mop the floors. (AR 61.) Plaintiff pays his own bills and does his own grocery shopping. (AR 62.) Plaintiff goes out to eat and attends church almost every Sunday. (AR 63.) Plaintiff has friends that come to visit him and goes to the movies. (AR 63.) Plaintiff does not like being in crowds. (AR 64.) Plaintiff does not use the computer much because he gets frustrated. (AR 64.) Plaintiff does enjoy photography and takes pictures of buildings. (AR 64-65.)

Plaintiff sleeps two to three hours a night. (AR 65.) He has to get up at night and go outside. (AR 65.) During the night Plaintiff does a lot of perimeter walking, making sure the house and neighborhood are all right. (AR 69.) Plaintiff is able to handle his self-care. (AR 65.)

A vocational expert ("VE") Thomas Dachelet also testified at the hearing. (AR 70-75.)

**B.   ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.
- Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of February 15, 2010.
- Plaintiff has the following severe impairments: posttramatic stress disorder ("PTSD"), major depressive disorder, and a history of alcohol abuse in remission.
- Plaintiff does not have an impairment alone or in combination that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with no physical limitations, but is limited to simple, routine tasks in a non-public setting with only occasional interaction with co-workers and supervisors.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on October 5, 1951, and was 58 years old on the alleged disability onset date which is defined as an individual of advanced age.
- Plaintiff has at least a high school education and is able to communicate in

1  English.

2  • Transferability of job skills is not material to the determination of disability.

3  • There are significant jobs that exist in the national economy that Plaintiff can perform.

4  • Plaintiff has not been under a disability as defined in the Social Security Act from February 15, 2010 through the date of decision.

(AR 29-37.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

1  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

2      Congress has provided that an individual may obtain judicial review of any final decision
3  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).
4  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the
5  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
6  disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.
7  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
8  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
9  (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,
10 considering the record as a whole, a reasonable person might accept as adequate to support a
11 conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of
12 Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

13     "[A] reviewing court must consider the entire record as a whole and may not affirm
14 simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting
15 Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not
16 this Court's function to second guess the ALJ's conclusions and substitute the court's judgment
17 for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is
18 susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
19 upheld.").

## IV.

## DISCUSSION AND ANALYSIS

22     Plaintiff contends that the ALJ erred by failing to properly assess the opinions of his
23 treating physicians.  Specifically, Plaintiff argues that the ALJ failed to adopt Dr. Beauchene's
24 understanding of the term "moderate" and that the record does not establish that his mental
25 impairments would abate in twelve months so the ALJ should have contacted Dr. Beauchene to
26 determine the extent of Plaintiff's limitations after five months.  Defendant counters that the
27 ALJ properly evaluated the medical evidence, gave the greatest weight to the opinion of Dr.
28 Beauchene, and there was no ambiguity or inadequacy in the record to require further

development.

### A. The ALJ's Determination of Plaintiff's Residual Functional Capacity Regarding His Mental Impairments

Plaintiff argues that the ALJ erred by failing to adopt Dr. Beauchene's understanding of the term "moderate". The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Andrews, 53 F.3d at 1041.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

In developing Plaintiff's residual functional capacity based upon his mental impairments, the ALJ considered the treatment which Plaintiff had received through the local veteran's hospital for his mental impairments developed in the course of his military service. (AR 32.)

The ALJ found that Plaintiff had some moderate limitations. (AR 32.) The ALJ gave significant weight to the opinion of Dr. Beauchene and only limited weight to the opinions of the agency and examining physicians that had found Plaintiff to have no severe mental impairments. (AR 34.) As to Plaintiff's mental health impairments, the record reflects the following.

On August 2, 2010, Plaintiff reported he has insomnia at times and is taking Ambien which has been effective. (AR 340.) He was to continue the Ambien as needed. (AR 340.) A depression screening was completed and Plaintiff was negative for depression. (AR 341.)

The Veteran's Administration had Plaintiff evaluated to determine his service rated disability. On September 15, 2010, Dr. Gonzalez performed a psychological evaluation. (AR 32, 457-462.) The record notes that Plaintiff began receiving mental health services in December 2009 for "depression, insomnia and PTSD ad stress." (AR 458.) He was participating in a group for PTSD and anger on a weekly basis and expressed mixed feelings about its efficacy. (AR 458.) Plaintiff's affect was labile and appropriate to conversation. (AR 460.) Thought content was clear and thought processes were goal directed. (AR 460.) His memory was not formally evaluated and no psychological testing was conducted. (AR 460.) Dr. Gonzalez diagnosed Plaintiff with PTSD, depression NOS, R/O alcohol abuse and a Global Assessment of Function ("GAF") score of 50.[2] (AR 461.)

The next indication of mental health issues is on April 27, 2011. Plaintiff reported that he had gotten depressed and lost his appetite, but that he is feeling better and his appetite and sleep are better. (AR 305.) On May 18, 2011, Plaintiff reported that his depression had improved. (AR 302.) On July 15, 2011, mental health screening was negative for depression. (AR 292.)

On October 26, 2011, Plaintiff reported depression and that his nightmares and flashbacks were becoming more frequent. (AR 32.) On October 28, 2011, Plaintiff had a comprehensive psychiatric examination by Dr. Mary Lewis. (AR 347.) Dr. Lewis found

---

[2] "A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).

Plaintiff's behavior to be cooperative and his attitude pleasant. (AR 349.) Plaintiff's conversation, pace and intensity were easily understood with no obvious expressive or receptive deficits. (AR 349.) Stream of mental activity was within normal limits and stream of consciousness was linear, logical, coherent, and goal directed. (AR 349.) There were no indications of hallucinations or delusions. (AR 349.) Plaintiff's mood was euthymic[3] and affect was appropriate. (AR 349.) Plaintiff reported good eating and sleeping habits. (AR 349.) Plaintiff's intellectual functioning and sensorium were within normal limits with no significant impairments found. (AR 349-351.) Dr. Lewis diagnosed Plaintiff with alcohol abuse in remission and a GAF score of 65.[4] (AR 34, 351.) Dr. Lewis found that Plaintiff was not suffering from a major mental disorder, and was not significantly limited in any work related residual capacity. (AR 34, 351-352.) Despite this finding that Plaintiff had no significant mental impairments, since Dr. Lewis's opinion was not based on the overall longitudinal medical evidence, the ALJ gave Plaintiff the benefit of the doubt that he has at least moderate limitations that limit him to simple, routine tasks. (AR 34.)

On October 26, 2011, Plaintiff was referred to mental health complaining of depression, and nightmares and flashbacks that were becoming more frequent. (AR 361, 393.) A mental health intake examination was conducted on November 3, 2011. (AR 32, 386-392.) Plaintiff complained of having flashbacks, but the record notes that "after further clarification it sounds as though he is having daydreams, and is waking up from his nightmares and feels as though these nightmares are very real." (AR 386.) The nightmares have been getting worse. (AR 386.) Dr. Richardson performed the intake examination and noted that Plaintiff had been receiving treatment since 2009 which was very helpful and was engaged in group therapy. (AR 32, 387.) Plaintiff reported that when he stops taking his medication his nightmares become less frequent.

---

[3] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

[4] "A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).

(AR 33, 387.)

Dr. Richardson found an essentially normal mental examination. (AR 33.) Plaintiff had no impairment in his ability to care for himself. (AR 389.) Plaintiff's attention and concentration was satisfactory with no distractibility. (AR 390.) Plaintiff was oriented and his memory was unimpaired, cognition was intact, and general fund of knowledge was satisfactory. (AR 390.) Insight and judgment were intact and impulse control was good. (AR 391.) Plaintiff was diagnosed with PTSD by history and depression with a GAF score of 60.[5] (AR 33, 392.)

On January 11, 2012, Plaintiff was seen for a refill of his medication and reported some improvement with the use of medication. (AR 33, 364.) On June 27, 2012, a depression screening was conducted and Plaintiff was negative for depression. (AR 441.) Plaintiff reported doing better on his medication. (AR 442.) Plaintiff talked about spending time with his grandchildren, volunteering at his church and the VA. (AR 442.) Plaintiff was seen on October 24, 2012, and reported that the Paxil was effective and he was feeling better. (AR 33, 431.)

On November 30, 2012, Plaintiff was seen and admitted that he was not taking his medication regularly as advised. (AR 33, 513.) Plaintiff complained of four months of loss of interest, decreased motivation, low energy, lack of appetite, and depressed mood. (AR 513.) Plaintiff reported he was only taking the medication when he felt down. (AR 33, 513.) Plaintiff's mood was depressed and his affect was mildly restricted. (AR 33, 513.) Plaintiff's insight and judgment were fair. (AR 514.) Plaintiff was diagnosed with a GAF score of 55. (AR 33, 514.)

On February 22, 2013, Plaintiff reported good compliance with his medication and no side effects. (AR 33, 472.) He reported that he did not know if the medication was continuing to be effective. (AR 472.) Plaintiff reported that he was a little more down as the holidays and February and March are hard for him. (AR 472.) Plaintiff complained about insomnia and his sleep medication was changed. (AR 33, 473.) Plaintiff's mood was depressed and his affect was

---

[5] "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

10

congruent, restricted. (AR 473.) His insight and judgment were fair. (AR 473.) He was alert, oriented, attentive, and his cognition was appropriate to conversation. (AR 473.) Plaintiff was diagnosed with PTSD; major depressive disorder, recurrent, mild to moderate; and a GAF score of 57. (AR 33, 473.)

On April 19, 2013, Dr. Beauchene completed a medical source statement opining that Plaintiff was not significantly limited in 17 of 20 work related functional categories. (AR 34, 523-525.) Dr. Beauchene opined that Plaintiff was mildly limited in his ability to carry out detailed instructions, and moderately limited in his ability to meet attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 34, 524-525.) Dr. Beauchene opined that these limitations had been present for five months and would not last for a continuous 12 months. (AR 34, 525.)

While Plaintiff argues that the ALJ failed to adopt Dr. Beauchene's understanding of the term "moderate", the ALJ properly considered that Dr. Beauchene opined that Plaintiff only had moderate limitations in two areas that would not last for a continuous twelve months. To qualify for disability benefits, "the plaintiff must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than twelve months.' " Nicholson v. Colvin, 106 F.Supp.3d 1190, 1193 (D. Or. 2015) (quoting 42 U.S.C. § 423(d)(1)(A)).

In considering Plaintiff's mental limitations, the ALJ limited Plaintiff to simple, routine tasks in a non-public setting with only occasional interaction with co-workers and supervisors. There is substantial evidence in the record to support the mental residual functional capacity.

**B.     The ALJ Was Not Required to Further Develop the Record**

Plaintiff also argues that the ALJ erred by accepting Dr. Beauchene's finding that Plaintiff's moderate limitations would not last for twelve months. Plaintiff contends that the ALJ should have contacted Dr. Beauchene to determine Plaintiff's mental impairments after five months.

11

1    When applying for disability benefits, the claimant has the duty to prove that he is
2 disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly
3 develop the record and to assure that the claimant's interests are considered." Widmark v.
4 Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443
5 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is
6 ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the
7 evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at
8 1150. Further, the ALJ's duty to fully develop the record is heightened where the claimant may
9 be mentally disabled and, therefore, unable to protect his own interests. Higbee v. Sullivan, 975
10 F.2d 558, 562 (9th Cir. 1992). He must be especially diligent in ensuring that favorable as well
11 as unfavorable facts and circumstances are elicited. Higbee, 975 F.2d at 561 (quoting Cox v.
12 Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

13   A specific finding of ambiguity or inadequacy in the record is not required to trigger the
14 necessity to further develop the record where the record itself establishes the ambiguity or
15 inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). However, the facts in this
16 case are not similar to other instances in which the ALJ was found to have a duty to further
17 develop the record. See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of
18 physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at
19 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration);
20 Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to
21 determine if claimants benefits were property terminated or should have been resumed after his
22 release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ
23 erred by failing to develop record where he relied on the opinion of a physician who recognized
24 he did not have sufficient information to make a diagnosis).

25   In this instance, Dr. Beauchene checked "NO" in answer to the question, "In your
26 opinion, have the limitations assessed on this form lasted 12 continuous months <u>or</u> can they be
27 expected to last 12 continuous months <u>at the assessed severity</u>?" Dr. Beauchene's unambiguous
28 opinion is supported by the medical record that shows that Plaintiff's mental impairments come

and go. Specifically, Plaintiff reports that his symptoms become worse over the holidays and that February and March are hard for him because March is the anniversary of when a good friend shot himself. (AR 67, 472.)

Despite a significant medical record in this case, there are only sporadic mentions of mental health issues in the medical record. Also, while Plaintiff claims to suffer from depression and an inability to concentrate, he had relatively normal mental health examinations, and the record notes no signs of depression when screened during medical appointments. (AR 292, 341, 347-351, 389-392, 441.)

There is substantial evidence in the record to support the ALJ's finding that Plaintiff's moderate limitations would not last for a continuous 12 months.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff's mental impairments would not preclude him from work activity. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jesse Holguin. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **May 9, 2016**

UNITED STATES MAGISTRATE JUDGE